## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:22-cv-00034-JDL |
| LUZ ESMERALDA TENPENNY, and STANLEY TENPENNY, | ) ) ) | |
| Defendants, | ) ) | |
| TD BANKNORTH, N.A.; MIKE MCDONALD HEATING SERVICE LLC, | ) ) ) ) | |
| Parties-in-interest. | ) | |

### ORDER ON PENDING MOTIONS

Plaintiff US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For VRMTG Asset Trust, ("US Bank") originally brought this action for equitable reformation of mortgage against Luz Esmeralda Tenpenny and Stanley Tenpenny in the Maine Superior Court (Cumberland County). In March 2022, after the case was removed to this Court, US Bank amended its Complaint to include claims for unjust enrichment, quantum meruit, and equitable subrogation of mortgage (ECF No. 13).

On August 3, 2022, Luz Tenpenny filed a Motion for Judgment on the Pleadings (ECF No. 37) requesting that this case be dismissed because all of US Bank's claims are barred by the six-year statute of limitations provided by 14

M.R.S.A. § 752 (West 2022).  Not long after, US Bank filed a Second Motion to Amend the Complaint, seeking to add a claim of judicial estoppel against Luz Tenpenny and a claim of fraud against Stanley Tenpenny (ECF No. 38).  US Bank also filed a Motion to Stay, seeking to stay this action so that it could receive approval from the United States Bankruptcy Court to bring the fraud claim against Stanley, who has been discharged in Chapter 7 bankruptcy (ECF No. 39).  All of these motions are now pending before the Court.

For the reasons described below, I grant Luz Tenpenny's Motion for Judgment on the Pleadings, deny US Bank's Second Motion to Amend the Complaint, and deny US Bank's Motion to Stay.

## I.  BACKGROUND

For the purposes of the pending motions, I take US Bank's well-pleaded factual allegations as true.  *See LaMarche v. Metro. Life Ins.*, 236 F. Supp. 2d 50, 54 (D. Me. 2002); *see also Lovell v. One Bancorp*, 690 F. Supp. 1090, 1096 (D. Me. 1988) (noting that for the purposes of a motion for judgment on the pleadings, "[t]he factual allegations in the complaint must be taken as true").

### A.    Factual Background

Luz and Stanley Tenpenny, then a married couple, co-owned property in Cumberland County ("the Property") beginning in 2004.  In 2005, Luz and Stanley executed a mortgage ("the 2005 mortgage") on the Property in the amount of $145,000 in favor of Banknorth, N.A.

About a year-and-a-half later, in 2006, Stanley executed a mortgage ("the 2006 mortgage") on the Property in the amount of $162,800[1] in favor of JPMorgan Chase Bank, N.A., US Bank's predecessor-in-interest.  Luz did not sign the 2006 mortgage or the promissory note secured by it—both were signed by Stanley alone.  She was also not listed in the granting clause of the 2006 mortgage.  Luz and Stanley used the proceeds of the promissory note secured by the 2006 mortgage, both of which were signed only by Stanley, to pay off the 2005 mortgage, which was signed by both Luz and Stanley.

In 2010, Luz was awarded sole ownership of the Property by decree of divorce and a deed from Stanley.

## B.    Procedural History

On November 15, 2021, US Bank, which had succeeded to JPMorgan Chase Bank's interest in the 2006 mortgage, filed a Complaint (ECF No. 10-15) in the Maine Superior Court (Cumberland County).  The Complaint named both Luz and Stanley Tenpenny as parties, and it also named several parties-in-interest, including the United States Internal Revenue Service.[2]  The Complaint sought to reform the 2006 mortgage to add Luz as a signatory based on the failure to have Luz sign the mortgage, which, US Bank alleged, was an inadvertent error based on mutual or unilateral mistake.  According to US Bank, reforming the mortgage to add Luz as a

---

[1]   A loan modification agreement later modified the unpaid principal balance of the loan to $162,794.17.

[2]   Specifically, the Complaint named as parties-in-interest TD Banknorth, N.A.; Maine Revenue Services; the IRS; and Mike McDonald Heating Service LLC.  All of these parties were named because they claimed, or could claim, an interest in the Property because of a mortgage, tax lien, or judgment lien.

party would "be consistent with the Defendants' original intention in granting the Premises as security, and Plaintiff's and its predecessor's intention, by accepting as collateral for a loan, by which loan Defendants directly benefitted."  ECF No. 10-15 at 5, ¶ 27.

Luz answered the Complaint (ECF No. 10-4), asserting a number of affirmative defenses, including that the action was barred by the six-year statute of limitations in 14 M.R.S.A. § 752.

The IRS then removed the case to federal court pursuant to 28 U.S.C.A. §§ 1442 and 1444 (West 2022).  After the case was removed, US Bank filed, without opposition, an Amended Complaint.  The Amended Complaint added counts for unjust enrichment, quantum meruit, and equitable subrogation of mortgage.  Luz answered the Amended Complaint, again raising the statute-of-limitations defense. Stanley and two of the parties-in-interest did not file answers, and default was entered against them at US Bank's request.  Two other parties-in-interest, the IRS and Maine Revenue Services, were later dismissed from the case.[3]

---

[3]  Maine Revenue Services was dismissed by stipulation.  The IRS filed a Motion for Judgment on the Pleadings (ECF No. 34), but the IRS and US Bank reached a consent judgment, which I entered on October 17, 2022 (ECF No. 52).  The IRS was dismissed as a party, and the Motion for Judgment on the Pleadings filed by the IRS was denied as moot (ECF No. 53).  Even though federal jurisdiction in this case was originally predicated on the presence of the IRS—a party that has since been dismissed—I have elected to exercise supplemental jurisdiction over the state law claims against the Defendants because of the extensive briefing in this case and the further delay that remand would cause.  *See* 28 U.S.C.A. § 1367 (West 2022); *Desjardins v. Willard*, 777 F.3d 43, 45 (1st Cir. 2015) ("Whether a court  should decline supplemental jurisdiction depends on a 'pragmatic and case-specific evaluation of a variety of considerations,' including 'the interests of fairness, judicial economy, convenience, and comity.'" (quoting *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998))).

### 1.     Luz's Motion for Judgment on the Pleadings

Luz Tenpenny filed a Motion for Judgment on the Pleadings (ECF No. 37) pursuant to Fed. R. Civ. P. 12(c), asserting that all of US Bank's claims are barred by the six-year statute of limitations in 14 M.R.S.A. § 752.  US Bank filed an objection (ECF No. 44), contending, among other things, that (1) the twenty-year statute of limitations in 14 M.R.S.A. § 751 (West 2022) applies to its Complaint; (2) even if the six-year statute of limitations applies, the cause of action did not accrue until Luz had stopped making payments on the mortgage; and (3) Luz must be precluded from asserting any defense in this case, including that US Bank's claims were barred by the statute of limitations, based on the doctrine of judicial estoppel.  With respect to its last argument, US Bank asserts that in a previous proceeding in the Bankruptcy Court, Luz represented that her interest in the Property was subject to the mortgage and that no portion of the Property was *not* subject to the mortgage.

### 2.     US Bank's Second Motion to Amend the Complaint

US Bank then filed a Second Motion to Amend the Complaint (ECF No. 38), requesting to amend the Amended Complaint to add facts supporting its assertion of judicial estoppel.  The Second Motion to Amend also requests that US Bank be permitted to add a claim of fraud against Stanley and include facts supporting that claim.  US Bank asserts that it discovered Stanley's fraud while conducting a title search in 2021.

Luz opposes the Second Motion to Amend the Complaint to the extent that it seeks to assert judicial estoppel against her, arguing that the claims that she made in her bankruptcy case are not actually inconsistent with either (1) her

representation in this case that an undivided one-half interest in the Property was not subject to the 2006 mortgage or (2) her representation in this case that all of the counts of US Bank's Amended Complaint were barred by the statute of limitations. She also argues that her representations in this case would not give her an unfair advantage, which weighs against the application of judicial estoppel. Therefore, Luz argues, it would be futile for US Bank to amend the Amended Complaint.

Stanley appeared in the case to object (ECF No. 46) to the Second Motion to Amend the Complaint. In addition to joining in Luz's arguments, Stanley asserts that amending the Amended Complaint would be futile because US Bank's predecessor-in-interest knew, or should have known, that Stanley and Luz co-owned the property because Stanley disclosed his marital status in his 2006 mortgage application and the deed establishing the joint tenancy between Luz and Stanley was a matter of public record. Additionally, Stanley argues that the joint ownership—and, presumably, any alleged fraud—should have been discovered when the mortgage was signed, when US Bank's predecessor-in-interest brought a foreclosure complaint, or when US Bank's predecessor-in-interest participated in Stanley's bankruptcy case.

### 3.  US Bank's Motion to Stay

Finally, US Bank filed a Motion to Stay (ECF No. 39), which is related to its request to amend the Amended Complaint to add a claim of fraud against Stanley. US Bank states that because Stanley has been discharged in Chapter 7 bankruptcy, "it may be necessary for the Plaintiff to obtain relief in his bankruptcy before it can amend the complaint in this action to allege fraud." ECF No. 39 at 2, ¶ 7. US Bank does not explain precisely what relief may be necessary or why it is uncertain that

such relief would be necessary.  Because obtaining such relief would take time, US Bank requests that this matter be stayed.

Luz opposes the Motion to Stay, contending that she would be significantly prejudiced by a stay because it would deny her "the timely resolution of her motion." ECF No. 43 at 2.  She further notes that it "strains credibility" for US Bank to assert that the fraud was not discovered until 2021 because US Bank's predecessor-in-interest already brought a foreclosure claim against Stanley over ten years ago, and the alleged fraud should have been discovered during the title search that was conducted as part of that action.  ECF No. 43 at 3.  She further argues that considerations of equity, hardship, and judicial economy weigh in favor of denying the request for a stay.

After oral argument, all three pending motions are ready for decision.[4]

## II.  LEGAL ANALYSIS

### A.   Luz's Motion for Judgment on the Pleadings

#### 1.    Legal Standard

A motion for judgment on the pleadings under Rule 12(c) is "treated much like a Rule 12(b)(6) motion to dismiss." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008).  A Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage," so "the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." *Id.* (quoting *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st

---

[4]  The Court held oral argument on the pending motions on November 3, 2022, and, at the argument, US Bank was ordered to file the bankruptcy documents related to its judicial estoppel arguments.  US Bank filed a responsive memorandum and the documents on November 9, 2022 (ECF No. 57).

Cir. 2006)); *see also R.G. Fin. Corp.*, 446 F.3d at 182 ("There is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point."). To survive a Rule 12(c) motion, the pleadings "must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" *Pérez-Acevedo*, 520 F.3d at 29 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A motion for judgment on the pleadings may be granted based on a statute-of-limitations defense if "the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins.*, 142 F.3d 507, 509 (1st Cir. 1998); *see Rivera-Gomez v. de Castro*, 843 F.2d 631, 632 (1st Cir. 1988).

## 2.    Judicial Estoppel

Luz's Motion for Judgment on the Pleadings is based on the six-year statute of limitations in 14 M.R.S.A. § 752. US Bank contends, however, that Luz should be precluded from raising *any* defense in this case, including the statute of limitations, because of the doctrine of judicial estoppel. According to US Bank, Luz previously represented in her bankruptcy proceeding that her interest in the Property was entirely subject to the 2006 mortgage, so she should be judicially estopped from denying that here. For reasons I will explain, I conclude that Luz is not barred by judicial estoppel from raising a statute-of-limitations defense.

"The equitable doctrine of judicial estoppel is ordinarily applied to 'prevent[] a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal

proceeding.'" *Guay v. Burack*, 677 F.3d 10, 16 (1st Cir. 2012) (alteration in original) (quoting *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32-33 (1st Cir. 2004)).   This is because of the commonsense rule that "[w]here one succeeds in asserting a certain position in a legal proceeding, one may not assume a contrary position in a subsequent proceeding simply because one's interests have changed." *Id.*  The doctrine is traditionally, although not exclusively, applied when "a litigant is 'playing fast and loose with the courts.'"  *Id.* (quoting *Alternative Sys. Concepts, Inc.*, 374 F.3d at 33).

As an initial matter, Luz argues that the Maine standard for judicial estoppel should apply rather than the federal standard because federal jurisdiction in this case, which involves claims arising under Maine law, was originally premised on the presence of the IRS, which is no longer a party.   According to Luz, the Maine standard for judicial estoppel is more exacting than its federal counterpart.

The First Circuit has previously noted the difficulty of resolving which judicial estoppel standard applies in federal courts, but it has not conclusively ruled on the issue.[5]  *See Perry v. Blum*, 629 F.3d 1, 8 (1st Cir. 2010); *Alternative Sys. Concepts, Inc.*, 374 F.3d at 32.   I need not resolve the issue of which standard applies, though, because under either standard, US Bank's assertion that Luz is judicially estopped from raising a statute-of-limitations defense is unavailing.

---

[5] Other courts have concluded that the federal standard for judicial estoppel should apply in federal courts, at least in diversity cases.  *See G-I Holdings, Inc. v. Reliance Ins.*, 586 F.3d 247, 261 (3d Cir. 2009); *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003); *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007); *Flores-Febus v. MVM, Inc.*, 45 F. Supp. 3d 175, 178 (D.P.R. 2014).

Under the federal standard, two conditions, at a minimum, must be satisfied before judicial estoppel can apply, although the doctrine resists the application of a mechanical checklist. *Alternative Sys. Concepts, Inc.*, 374 F.3d at 33. The first is that "the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive." *Id.* The second is that "the responsible party must have succeeded in persuading a court to accept its prior position." *Id.* Only a "strong" showing will satisfy this requirement. *Perry*, 629 F.3d at 11. Additionally, courts will often consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Guay*, 677 F.3d at 16 (citing *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)). Although it is not strictly required, if unfair advantage is present, it is a "powerful" factor in favor of applying judicial estoppel. *Id.* at 16-17.

In considering whether judicial estoppel should apply here, it is useful to identify precisely what positions Luz has taken in this case and in her earlier bankruptcy case. First, Luz arguably represented to the Bankruptcy Court that her interest in the Property was entirely subject to the mortgage owned by US Bank's predecessor-in-interest.[6] Second, Luz asserts in this case that she possesses an undivided one-half interest in the Property that is *not* subject to US Bank's mortgage. Third, Luz asserts in this case that all four counts of US Bank's Amended Complaint

---

[6] Specifically, Luz stated in her Chapter 7 petition to the Bankruptcy Court that (1) she was the sole owner of real estate property worth $160,000; (2) US Bank's predecessor-in-interest had a claim against her in the amount of $183,482, of which $160,000 was secured by the Property; (3) she alone owed that debt; (4) she intended to retain the property and enter into a reaffirmation agreement; and (5) there were no other assets, property, or claims that she had not previously listed. Luz did not list any portion of the Property that was not subject to the mortgage. Taken together, these statements arguably indicate that Luz asserted to the Bankruptcy Court that her entire interest in the Property was subject to the 2006 mortgage.

are time-barred because US Bank did not bring these claims within six years of suffering the alleged injuries.

Luz may be judicially estopped from taking the second position—that she possesses an undivided one-half interest in the Property—in this case because both minimum conditions for judicial estoppel appear to be met. First, a representation that Luz has a one-half undivided interest in the Property that is not subject to US Bank's mortgage appears to be directly inconsistent with Luz's earlier representations in her bankruptcy case. Additionally, the Bankruptcy Court discharged Luz's debt, so she evidently persuaded the court to accept her earlier representation. But I do not finally decide whether Luz would be judicially estopped from arguing that her undivided one-half interest in the Property is not subject to US Bank's mortgage because, even if she was, that does not control the outcome of this case for the reasons explained below.

This is because even if Luz is judicially estopped from taking the second position, she is not estopped from asserting that all four of US Bank's claims are barred by the statute of limitations because the first judicial estoppel condition, a direct inconsistency, is not present. Put simply, there is nothing inconsistent about Luz simultaneously taking the position in her bankruptcy case that her interest in the Property was entirely subject to the 2006 mortgage and her arguing here that US Bank's claims for equitable reformation, unjust enrichment, quantum meruit, and equitable subrogation were not timely brought. The two positions are unrelated. Furthermore, given the lack of an inconsistency between Luz's earlier representations and her current invocation of the statute of limitations, Luz does not

gain any unfair advantage from asserting the latter position here, which also weighs against the application of judicial estoppel.

I also reach the same result under the Maine standard for judicial estoppel. Under Maine law, judicial estoppel applies if "(1) the position asserted in the subsequent legal action [is] clearly inconsistent with a previous position asserted; (2) the party in the previous action [has] successfully convinced the court to accept the inconsistent position; and (3) the party [has] gain[ed] an unfair advantage as a result of [his or her] change of position in the subsequent action." *In re Child of Nicholas P.*, 2019 ME 152, ¶ 16, 218 A.3d 247 (alterations in original) (quoting *Linnehan Leasing v. State Tax Assessor*, 2006 ME 33, ¶ 25, 898 A.2d 408). As noted above, there is no clear inconsistency between Luz's representations in her bankruptcy case and her position here that US Bank's claims are barred by the statute of limitations. Additionally, because of the lack of inconsistency, there is no real risk that Luz would gain an unfair advantage because of her change in position.

US Bank argues that because Luz previously asserted in her bankruptcy case that her interest in the Property was entirely subject to the 2006 mortgage, she must be precluded by the doctrine of judicial estoppel from raising *any defense* in this action. But US Bank does not cite to any authority for this bald assertion and there is authority which cuts against US Bank's position. *See O'Rourke v. Jason Inc.*, 978 F. Supp. 41, 48 (D. Mass. 1997) (explaining that the doctrine of judicial estoppel applies "only in certain *narrow* circumstances to protect the integrity of the judicial process" (emphasis added) (citing *United States v. Levasseur*, 846 F.2d 786, 792 (1st Cir. 1988))). There is no reason to conclude that Luz waived her statute-of-limitations

defense by making representations to the Bankruptcy Court about her interest in the Property being entirely subject to the 2006 mortgage.

For those reasons, I conclude that equitable considerations do not favor the application of judicial estoppel in this case. Consequently, Luz is not precluded from asserting that the six-year statute of limitations in 14 M.R.S.A. § 752 bars all of US Bank's claims.

### 3.    Statute of Limitations

Having concluded that Luz can raise a statute-of-limitations defense, I turn to whether each of the claims brought by US Bank is barred by the statute of limitations. For the reasons articulated below, I conclude that all of US Bank's claims are time-barred, and therefore, Luz is entitled to judgment on the pleadings.

### (a) Reformation of Mortgage

The Amended Complaint requests equitable reformation of the 2006 mortgage to add Luz as a signatory. Because Luz raises a statute-of-limitations defense to this claim, two questions must be resolved: (i) which statute of limitations applies and (ii) when the cause of action accrued.

### (i) Proper Statute of Limitations

Luz contends that the general six-year statute of limitations provided by 14 M.R.S.A. § 752 applies to all claims in the Amended Complaint, including the count for reformation of mortgage. US Bank disagrees, contending that the twenty-year statute of limitations for personal actions on mortgages set out by 14 M.R.S.A. § 751 applies. It further contends that section 752 cannot be the applicable statute of limitations because this is an "action[] on a judgment or decree of any court of record

of the United States" because the Bankruptcy Court gave Luz a judgment in the form of a discharge.

Title 14 M.R.S.A. § 752 provides that "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards, except actions on a judgment or decree of any court of record of the United States, or of any state, . . . and except as otherwise specially provided." Accordingly, a six-year statute of limitations applies unless another statute specifically provides otherwise. *See id.*; *Est. of Sprague v. Bankers Life & Cas. Co.*, 2021 ME 64, ¶ 9, 264 A.3d 1243. This general period of limitations applies to "all civil actions, including equitable claims, . . . unless another more particularized statute applies." *U.S. Bank Nat'l Ass'n v. Adams*, 2014 ME 113, ¶ 4, 102 A.3d 774.

In contrast, 14 M.R.S.A. § 751 applies in much narrower circumstances. That statute provides, in relevant part, that "personal actions on contracts or liabilities under seal, promissory notes signed in the presence of an attesting witness, or on the bills, notes, or other evidences of debt issued by a bank must be commenced within 20 years after the cause of action accrues." *Id.* According to US Bank, the fact that it seeks to reform an existing mortgage is enough to bring this case within section 751's reach because the 2006 mortgage is "other evidence of debt." ECF No. 44 at 3, ¶ 5.

I agree with Luz that US Bank's reformation-of-mortgage claim is subject to the six-year statute of limitations provided by 14 M.R.S.A. § 752. Reformation of mortgage is an equitable remedy, *see Bank of N.Y. Mellon v. King*, No. RE-16-0054, 2018 Me. Super. LEXIS 124, at *6 (Aug. 24, 2018); *Tibbetts v. Pelotte*, 427 A.2d 956,

958 (Me. 1981), and, as described above, claims arising in equity are governed by the six-year statute of limitations in 14 M.R.S.A. § 752, *see Adams*, 2014 ME 113, ¶ 4, 102 A.3d 774 (concluding that an action to place an equitable lien on a party's property was subject to the six-year statute of limitations in 14 M.R.S.A. § 752). Consequently, the limitations period in section 752 applies to reformation-of-mortgage claims. *King*, 2018 Me. Super. LEXIS 124, at *6.[7]

US Bank contends that section 752 is inapplicable for two reasons. First, it argues that the proper statute of limitations is section 751, which provides a twenty-year period in which to bring actions on mortgages. Second, it argues that even if section 751 does not apply, the six-year period set out in section 752 is inapplicable because this is an action "on a judgment." Both arguments are unpersuasive.[8]

For section 751 to apply, two conditions must be true: (1) there must be a "personal action[] on" (2) an enumerated document, such as "notes or other evidences of debt." *See US Bank, N.A., as Tr. for Truman 2013 SC3 Title Tr. v. HLC Escrow,*

---

[7] In a 1985 case, the Maine Superior Court reached a different conclusion. *See Ward v. Robertson-Dick*, No. CV-82-317, 1985 Me. Super. LEXIS 42, at *3-4 (Feb. 20, 1985). In *Ward*, the Superior Court concluded that section 752 did not apply to an action to reform a deed because "[t]raditionally, in Maine, at least prior to the merger of law and equity, statutes of limitations did not apply to actions to reform deeds." *Id.* at 3. Instead, those actions were governed by the equitable doctrine of laches. *Id.* The *Ward* holding is admittedly inconsistent with my analysis, as well as the Superior Court's more recent discussion of the issue in *King*, 2018 Me. Super. LEXIS 124, at *6. *See Woodman v. Jankowski*, 2021 Me. Super. LEXIS 79, at *13 (Sept. 1, 2021) (noting, and not resolving, the disagreement between *King* and *Ward*). US Bank has not cited *Ward* or invoked the doctrine of laches at any point in this action. In any event, the analysis in *King*, which tracks my analysis here, is more persuasive than the analysis in *Ward*, whose logic has been undercut by later Law Court cases explaining that the statute of limitations in section 752 applies to equitable claims, *see, e.g.*, *Adams*, 2014 ME 113, ¶ 4, 102 A.3d 774.

[8] To the extent that US Bank raises these same arguments with respect to the other counts in the Amended Complaint, they are likewise unpersuasive with respect to those other counts for the reasons provided here.

*Inc.*, 919 F.3d 17, 21 (1st Cir. 2019) (alteration in original) (quoting 14 M.R.S.A. § 751).  Unless both conditions are true, section 751 is inapplicable.  *See id.*

US Bank is correct that the 2006 mortgage qualifies as a "note[] or other evidence[] of debt issued by a bank."  *See id.*  The real issue is whether a claim for reformation of mortgage constitutes a "personal action[] on" the 2006 mortgage for purposes of section 751.  *Id.*  I conclude that it does not because courts have, not surprisingly, construed "personal action[] on" a mortgage to include only proceedings enforcing a mortgage, rather than any action that relates to a mortgage.  *See Adams*, 2014 ME 113, ¶ 4 n.2, 102 A.3d 774; *see also HLC Escrow, Inc.*, 919 F.3d at 21-22 (citing *Adams* and concluding that even though an action against a closing agent and title insurer is related to a mortgage, that is insufficient to bring it within section 751's reach); *Portland Sav. Bank v. Shwartz*, 135 Me. 321, 322, 196 A. 405, 406 (1938) (concluding that an action against the endorser of a note does not come within an exception to the general six-year statute of limitations).

The Law Court's decision in *U.S. Bank National Association v. Adams*, 2014 ME 113, ¶ 4, 102 A.3d 774, is particularly instructive.  In *Adams*, Dorothy Adams executed a promissory note and mortgage in favor of the plaintiff's predecessor-in-interest in 2005, but her brother, defendant Charles Adams, did not sign the mortgage or note.  *Id.* ¶ 2.  Dorothy allegedly used the proceeds from the note to pay off a loan for which she and Charles were both jointly liable.  *Id.* ¶ 3.  In 2012, after Dorothy defaulted, the plaintiff sought to place an equitable lien on Charles's interest in the property because, it asserted, Charles had benefitted when his sister had used

the proceeds of the note to pay off the earlier joint loan. *Id.* Charles argued the equitable action was barred by the six-year statute of limitations in section 752. *Id.*

The Law Court agreed with Charles, noting that all equitable claims, including the one brought by the plaintiff, were subject to the six-year statute of limitations unless another more particularized statute applies, *id.* ¶ 4, and, analogizing to unjust enrichment, it concluded that the claim accrued when Dorothy signed the contested note and Charles did not—more than six years earlier. *See id.* at ¶¶ 4-5. The Law Court expressly rejected the argument that the twenty-year statute of limitations under section 751 should apply, noting that "[the plaintiff's] cause of action involves an equitable claim against Charles's ownership interest in the Dedham property and is not an action to enforce the contested note." *Id.* ¶ 4 n.2.

This case is almost on an exact footing with *Adams*—US Bank has brought an action in equity seeking to reform the mortgage to include Luz. Much like the action in *Adams*, the equitable claim of reformation of mortgage is not an action to enforce the note or mortgage, so it is subject to the six-year statute of limitations under section 752 and not the twenty-year statute of limitations under section 751. See *id.* ¶¶ 4 & n.2, 5.

I also find unpersuasive US Bank's argument that the six-year statute of limitations set out in section 752 is inapplicable because this action constitutes an "action[] on a judgment or decree of [a] court of record of the United States" and therefore falls within an exception to section 752. ECF No. 44 at 4 (quoting 14 M.R.S.A. § 752). According to US Bank, this case falls within that exception because the Bankruptcy Court gave Luz a judgment of discharge because Luz's property was

subject to a mortgage. But this provision of section 752 relates to actions to enforce prior court judgments. *See, e.g.*, *Carter v. Carter*, 611 A.2d 86, 87-88 (Me. 1992) (concluding that enforcement of child support orders falls outside of the six-year period of limitations in section 752 because it is an action to enforce a judgment); *Cloutier v. Turner*, 2012 ME 4, ¶ 9, 34 A.3d 1146 (same); *Faith Temple v. DiPietro*, 2015 ME 166, ¶ 14, 130 A.3d 368 (noting that claims for debt on a judgment fall outside of the six-year period of limitations in section 752). Here, US Bank seeks to reform the 2006 mortgage, not enforce the Bankruptcy Court's judgment. The mere fact that US Bank alleges that there is a relationship between the mortgage and the Bankruptcy Court's judgment because of judicial estoppel is insufficient to bring this action within the "action[] on a judgment" exception to section 752, and US Bank has not pointed to any authority supporting a contrary conclusion.[9]

Accordingly, I conclude that US Bank's claim for reformation of mortgage is subject to the six-year statute of limitations in 14 M.R.S.A. § 752.

### (ii) Accrual of the Cause of Action

US Bank next contends that even if Luz is correct that the six-year statute of limitations applies to the reformation-of-mortgage claim, the cause of action did not accrue until Luz failed to make her mortgage payments or until Luz's discharge in her bankruptcy case. Both arguments are unpersuasive.

---

[9] US Bank's assertion that this is an action on the Bankruptcy Court's judgment is also inconsistent with its earlier pleadings in this case. Luz's Bankruptcy Court proceedings are not mentioned at all in the sections of the Amended Complaint or the original Complaint that discuss US Bank's request for reformation of mortgage.

"Maine courts generally consider an action accrued 'when a plaintiff received a judicially recognizable injury.'" *Wyman v. U.S. Surgical Corp.*, 456 F. Supp. 3d 224, 245 (D. Me. 2020) (quoting *Erlich v. Ouellette, Labonte, Roberge and Allen, P.A.*, 637 F.3d 32, 35 (1st Cir. 2011)). "In other words, it accrues at 'the point at which a wrongful act produces an injury for which a potential plaintiff is entitled to seek judicial vindication.'" *McLaughlin v. Superintending Sch. Comm. of Lincolnville*, 2003 ME 114, ¶ 22, 832 A.3d 782 (quoting *Williams v. Ford Motor Co.*, 342 A.2d 712, 714 (Me. 1975)).

Here, for the purposes of reformation of mortgage, the cause of action began to accrue in 2006, when Stanley signed the mortgage. According to the Amended Complaint, US Bank seeks (1) a determination that it was an error not to have Luz sign the 2006 mortgage and (2) reformation of the mortgage to include her because "at the time of the granting of the subject Mortgage, Luz . . . was an owner . . . and as such[,] was required to sign the Mortgage" and the failure to have her do so "was a mutual mistake and/or unilateral mistake." ECF No. 13 at 6, ¶¶ 24, 27. Accordingly, by US Bank's own admission, the alleged injury occurred in 2006 when Luz failed to sign the mortgage, so that is when the cause of action accrued.

This conclusion is also consistent with case law. In *King*, 2018 Me. Super. LEXIS 124, at *6-7, the Superior Court concluded that the cause of action for reformation based on a mistake accrued when the mistake occurred. And in *HLC Escrow, Inc.*, 919 F.3d at 22-23, a case involving an erroneous property description in a mortgage, the First Circuit concluded that the plaintiff's "unilateral mistake and negligence claims accrued on the date of the mortgage closing in 2007, or—at the

latest—when [the plaintiff] discovered that the mortgage property description was incorrect."[10]  Additionally, some courts outside of Maine that have confronted similar issues have reached the same result.  *See Bank of Am., N.A. v. Darkadakis*, 76 N.E.3d 577, 592 (Ohio Ct. App. 2016) ("A cause of action for reformation of a written instrument based upon mistake accrues upon the execution of the instrument." (quoting *Bonham v. Hamilton*, No. CA2006-02-030, 2007 WL 210587, at *5 (Ohio Ct. App. Jan. 29, 2007))); *Nationstar Mortg., LLC v. Hilpertshauser*, 66 N.Y.S.3d 687, 689 (N.Y. App. Div. 2017) ("Reformation based upon a purported mistake is governed by a six-year statute of limitations that is generally measured from the occurrence of the mistake." (quoting *Wilshire Credit Corp. v. Ghostlaw*, 753 N.Y.S.2d 537, 539 (N.Y. App. Div. 2002))).

US Bank's argument that the injury occurred when Luz first defaulted on her obligations under the loan is unpersuasive.  Although that may have been the first time that US Bank's financial interest was concretely affected, that does not change the fact that the actual alleged injury took place earlier, at the time the 2006 mortgage was executed.  *See Rared Manchester NH, LLC v. Rite Aid of N.H., Inc.*, 693 F.3d 48, 52 (1st Cir. 2012) (rejecting an argument that a plaintiff's cause of action for breach of fiduciary duty and misrepresentation accrued when rent would have been

---

[10]  There is no suggestion in US Bank's pleadings or memoranda of law that it contends that the failure to have Luz sign the mortgage could not have been discovered until a later time.  *See Warren v. Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008) (discussing the "discovery rule" doctrine in which "a claim accrues only when a plaintiff knows or has sufficient reason to know of the conduct upon which the claim is grounded").  And in any event, subject to some exception, "Maine courts generally consider an action accrued 'when a plaintiff received a judicially recognizable injury,' no matter when the injury was discovered."  *Erlich*, 637 F.3d at 35 (citations omitted) (quoting *McLaughlin*, 832 A.2d at 788); *see also King*, 2018 Me. Super. LEXIS 124, at 7-8 (declining to extend the discovery rule to an action for reformation based on a mutual mistake).

due under a contract rather than when the contract was executed because the plaintiff could have brought an action immediately after the contract was executed). "Injury . . . is not always synonymous with money damages. Under Maine law, a party is injured when its legal rights have been violated, even if nominal damages or equitable remedies are the only forms of recourse available to it at that time." *Id.* Here, US Bank's legal rights were first injured, if at all, when the mistake occurred—not when Luz's default occurred.

US Bank's argument that the injury occurred when Luz's debts were discharged in bankruptcy is likewise unpersuasive. Even though Luz's representations during the bankruptcy process are arguably inconsistent with her claim now that her interest in the Property is not entirely subject to the 2006 mortgage, that does not change the fact that the alleged harm for purposes of reformation of mortgage occurred earlier, when Luz did not sign the 2006 mortgage. Luz's representations during the bankruptcy process cannot revive a cause of action based on that harm.

Because the six-year statute of limitations in 14 M.R.S.A. § 752 applies and because the cause of action accrued in 2006—more than six years before this action was filed—I conclude that US Bank's claim for reformation of mortgage is barred by the statute of limitations.

### (b) Unjust Enrichment

I next address US Bank's claim of unjust enrichment. US Bank argues that Luz Tenpenny would be unjustly enriched if the Court did not establish a lien on her Property because Luz used the money from Stanley's execution of the note and the

2006 mortgage—without herself signing the mortgage or note—to pay off a prior mortgage to which she was bound.  Unjust enrichment is an equitable doctrine that "describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels the performance of a legal and moral duty to pay." *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1145 (Me. 1994) (quoting *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103, 105 n.3 (Me. 1994)).  "In an unjust enrichment case[,] the court must decide what constitutes the inequitable retention of a benefit by the defendant." *Id.*

The six-year statute of limitations in section 752 applies to unjust enrichment claims.  *See In re Est. of Miller*, 2008 ME 176, ¶ 28, 960 A.2d 1140; *Me. Mun. Emps. Health Tr. v. Maloney*, 2004 ME 51, ¶ 10, 846 A.2d 336.  And for the same reasons as above, an unjust enrichment claim is not an action on the note or contract, so the longer statute of limitations in 14 M.R.S.A. § 751 is inapplicable.  *See Adams*, 2014 ME 113, ¶ 4 n.2, 102 A.3d 774; *HLC Escrow, Inc.*, 919 F.3d at 21-22.  Therefore, if the cause of action for unjust enrichment accrued more than six years before the Amended Complaint was filed, the claim is time-barred.

Here, the claim of unjust enrichment is based on Luz's use of the proceeds of the 2006 mortgage, signed only by Stanley, to pay off the earlier 2005 mortgage, signed by both Stanley and Luz.  Consequently, any injury accrued, at the very latest, on January 11, 2007, when the 2005 mortgage was discharged.  *See York Cnty. v. PropertyInfo Corp.*, 2019 ME 12, ¶ 27, 200 A.3d 803 ("An unjust enrichment claim accrues when the alleged unjust enrichment occurs."); *Adams*, 2014 ME 113, ¶ 5, 102

A.3d 774 (concluding that a claim for unjust enrichment accrued when a party used the proceeds from a later mortgage to pay off an earlier mortgage on the property); *see also In re Est. of Miller*, 2008 ME 176, ¶ 30, 960 A.2d 1140 (concluding that a claim for unjust enrichment based on a party's retention of a savings account after the death of the account's joint owner accrued when the party was first added to the account). Therefore, the unjust enrichment claim is time-barred.

### (c) Quantum Meruit

US Bank also contends that it is entitled to relief under the doctrine of quantum meruit because Luz used its money to pay off her earlier 2005 mortgage, creating a "contract implied in fact" between them. ECF No. 13 at 11.

"[A] claim for relief pursuant to quantum meruit seeks 'recovery for services or materials provided under an implied contract.'" *Cummings v. Bean*, 2004 ME 93, ¶ 9, 853 A.2d 221 (quoting *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269). Quantum meruit is not an equitable remedy; instead, it is "an issue triable of right by a jury" and, thus, an action in law. *Id.* (quoting *Bowden v. Grindle*, 651 A.2d 347, 351 (Me. 1994)). "To sustain a claim in quantum meruit, a plaintiff must establish that '(1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment.'" *Forrest Assocs. v. Passamquoddy Tribe*, 2000 ME 195, ¶ 11, 760 A.2d 1041 (quoting *Carvel Co. v. Spencer Press, Inc.*, 1998 ME 74, ¶ 12, 708 A.2d 1033).

Quantum meruit is subject to the six-year statute of limitations in section 752 because it is a "civil action" and does not fall within the reach of section 751 or any

other statute.  14 M.R.S.A. § 752; *see Est. of Sprague*, 2021 ME 64, ¶¶ 6, 9, 264 A.3d 1243 (analyzing whether a number of claims, including a claim for quantum meruit, were properly dismissed for failure to comply with the six-year statute of limitations); *Baroudi v. Maselli*, No. AUBSC-CV-15-021, 2016 Me. Super. LEXIS 144, at \*5 (June 15, 2016) (concluding that the six-year statute of limitations in section 752 applied to all of the plaintiff's claims, including a quantum meruit claim); *Flannery v. Lajoie*, No. BCD-CV-11-34, 2012 Me. Bus. & Consumer LEXIS 20, at \*6 (Mar. 7, 2012) (same).

Furthermore, the cause of action for quantum meruit accrued more than six years before this action was brought.  This conclusion is supported by the elements of a quantum meruit claim, *see Forrest Assocs.*, 2000 ME 195, ¶ 11, 760 A.2d 1041, as well as US Bank's own representations in its Amended Complaint.  US Bank's Amended Complaint states in relevant part, "Luz Tenpenny received the benefit of Plaintiff's money paying off a mortgage that encumbered her property . . . and which mortgage she had signed[,] and she accepted the benefit from the Plaintiff," which gave rise to a "contract implied in fact."  ECF No. 13 at 11.  I therefore conclude that the cause of action for quantum meruit accrued when the 2005 mortgage was discharged or, at the latest, within a reasonable time after the mortgage was discharged—well over six years before this action was brought.[11]  *See Flannery*, 2012

---

[11]  Luz contends that the cause of action for quantum meruit accrued when the 2005 mortgage was paid off because that is when the cause of action for unjust enrichment accrued.  Although this conclusion is correct, the reasoning is not: in recent years, the Law Court has taken pains to clarify the differences between quantum meruit and unjust enrichment actions.  *See, e.g., Dinan v. Alpha Networks Inc.*, 2013 ME 22, ¶ 20, 60 A.3d 792; *Paffhausen*, 1998 ME 47, ¶¶ 6 & n.3, 7, 708 A.2d 269; *Danforth v. Ruotolo*, 650 A.2d 1334, 1335 n.2 (Me. 1994); *Aladdin Elec. Assocs.*, 645 A.2d at 1145; *A.F.A.B., Inc.*, 639 A.2d at 105 n.3.  Accordingly, determining at what point a quantum meruit claim accrues must be governed by the elements of quantum meruit and not the point of accrual for a

Me. Bus. & Consumer LEXIS 20, at *6 ("When the cause of action accrues depends on the nature of the claim. In this case, the . . . quantum meruit claim . . . presumably accrued upon the Defendant's failure to pay within a reasonable time."). This conclusion accords with approaches that other courts have taken in addressing quantum meruit claims. *See, e.g.*, *Beltran v. Vincent P. Miraglia, M.D., P.A.*, 125 So. 3d 855, 859 (Fla. Dist. Ct. App. 2013) ("Statutes of limitations on . . . quantum meruit claims generally begin to run upon the occurrence of the event that created the uncompensated benefit in the defendant, i.e., the plaintiff performed the labor that benefitted the defendant or the defendant obtained the subject property or goods."); *Hannon Law Firm, LLC v. Melat, Pressman & Higbie, LLP*, 293 P.3d 55, 58-59 (Colo. App. 2011) ("The statute of limitations therefore begins to run with respect to a quantum meruit claim when a plaintiff has conferred a benefit upon the defendant and the retention of the benefit becomes unjust."). Accordingly, US Bank's claim for quantum meruit is time-barred.

### (d) Equitable Subrogation

Finally, US Bank seeks equitable subrogation. Specifically, it argues that it should be equitably subrogated to the rights of BankNorth, N.A., whose 2005 mortgage was discharged with the proceeds of the 2006 mortgage issued by US Bank's predecessor-in-interest.

---

separate unjust enrichment claim. *See Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 287 P.3d 842, 847 (Colo. 2012) (en banc) ("A quantum meruit claim accrues when a person discovers, or through the exercise of reasonable diligence should discover, that all the elements of the claim are present.").

"Equitable subrogation is 'a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it.'" *Nappi v. Nappi Distribs.*, 1997 ME 54, ¶ 8, 691 A.2d 1198 (quoting *United Carolina Bank v. Beesley*, 663 A.2d 574, 576 (Me. 1995)). "It is a 'concept derived from principles of restitution and unjust enrichment.'" *Id.* (quoting *N. E. Ins. v. Concord Gen. Mut. Ins.*, 433 A.2d 715, 719 (Me. 1981)).

The Law Court has previously applied the doctrine of equitable subrogation in cases similar to this, noting that "[w]hen a lender advances to a co-tenant money with which to discharge a mortgage on the common property, it is proper to apply the doctrine and to subrogate the lender to the discharged mortgage, even as against co-tenants who were unaware of and did not authorize the transaction." *Beesley*, 663 A.2d at 576. "In addition, a mortgagee who, in performing a title search, negligently fails to uncover an existing lien on the property is not precluded from the remedy of equitable subrogation." *Id.*

But the claim for equitable subrogation must not be time-barred in order for US Bank to be entitled to the relief it requests. *See Yousuf v. Cohlmia*, 741 F.3d 31, 44 (10th Cir. 2014) (concluding even though the facts of the case arguably supported recovery under a theory of equitable subrogation, the equitable subrogation claim was time-barred by the applicable statute of limitations). Here, the equitable subrogation claim is time-barred.

Although the Law Court has not yet had occasion to determine which statute of limitations applies to bringing equitable subrogation claims or when a cause of action for equitable subrogation accrues, the language of the relevant statutes and

principles of the related doctrine of unjust enrichment guide my analysis.[12]  By its plain language, the operative statute of limitations is the six-year general statute of limitations in section 752, which applies to equitable claims such as unjust enrichment or equitable subrogation.  *See* 14 M.R.S.A. § 752; *Adams*, 2014 ME 113, ¶ 4, 102 A.3d 774.

Additionally, the cause of action for equitable subrogation began to accrue when Luz's 2005 mortgage was discharged with the proceeds of the 2006 mortgage signed only by Stanley.  In addition to having logical resonance based on the nature of an equitable subrogation claim, this conclusion is consistent with the point at which an unjust enrichment claim accrues, *see Adams*, 2014 ME 113, ¶ 5, 102 A.3d 774,[13] and is consistent with conclusions reached by other courts, *see, e.g.*, *Gulf Coast Bank & Tr. Co. v. Virgil Resort Funding Grp., Inc.*, 119 N.Y.S.3d 618, 621 (N.Y. App. Div. 2020) (concluding a cause of action for equitable subrogation accrued at the time a new loan was used to satisfy an existing debt because "[a] cause of action seeking to establish a lien pursuant to the doctrine of equitable subrogation . . . begins to run

---

[12]  Luz cites *Maine Municipal Employees Health Trust v. Maloney*, 2004 ME 51, 846 A.2d 336, as support for the proposition that a six-year statute of limitations applies to equitable subrogation claims.  But *Maloney* presents a subtly different issue than the one in the case.  In *Maloney*, the defendant's tort claim to which the plaintiff sought to be equitably subrogated was itself barred by the six-year statute of limitations.  *See id.* ¶¶ 7-8.  The Law Court concluded that because a subrogee could obtain no greater rights than a subrogor, the plaintiff had waited too long to enforce its equitable subrogation claim.  *See id.*  Thus, I disagree with Luz's contention that *Maloney* established that equitable subrogation actions are subject to the six-year statute of limitations in section 752.  *But see Flannery*, 2012 Me. Bus. & Consumer LEXIS 20, at *6 (citing *Maloney* for the proposition that an equitable subrogation claim is subject to the six-year statute of limitations).

[13]  Unlike quantum meruit claims, *see supra* n.11, equitable subrogation actions are derived from unjust enrichment and, therefore, the statute-of-limitations analysis for unjust enrichment actions is relevant in determining the point at which the statute of limitations for an equitable subrogation action begins to run.  *See Maloney*, 2004 ME 51, ¶ 9 n.1, 846 A.2d 336 ("It is not clear that the unjust enrichment theory of recovery is substantially different from the equitable subrogation theory.").

upon the occurrence of the wrongful act giving rise to a duty of restitution" (second alteration in original) (quoting *U.S. Bank Nat'l Ass'n v. Salem*, 81 N.Y.S.3d 583, 584 (N.Y. App. Div. 2018) (mem.))); *Republic Underwriters Ins. v. Fire Ins. Exch.*, 655 P.2d 544, 546 (Okla. 1982) (concluding that a claim for equitable subrogation was time-barred because it was not brought within three years after the action could have been first maintained).  US Bank did not bring its equitable subrogation claim within six years after the cause of action accrued and, therefore, the claim for equitable subrogation is time-barred.

Because Luz is not judicially estopped from raising a defense that the six-year statute of limitations in 14 M.R.S.A. § 752 bars all of US Bank's claims, and because Luz has demonstrated that all of US Bank's claims are time-barred, she is entitled to judgment on the pleadings.

## B.    US Bank's Second Motion to Amend the Complaint

### 1.    Legal Standard

A party may amend its pleading once as a matter of course within twenty-one days after the pleading is served or within twenty-one days after service of a responsive pleading or motion.  Fed. R. Civ. P. 15(a)(1).  Otherwise, a party may amend its pleading only with the consent of the opposing party or with the court's leave.  Fed. R. Civ. P. 15(a)(2).  Such leave will be freely given when "justice so requires," *id.*, but the Court need not "mindlessly grant every request for leave to amend."  *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 20 (1st Cir. 2017) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006)).  Instead, the Court may deny leave to amend when it concludes, based on the totality of the

circumstances, that "the request is characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" *Id.* (alteration in original) (quoting *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 389 (1st Cir. 2013)). Additionally, leave to amend may be denied "if the proposed amendment 'would serve no useful purpose.'" *Calderón-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 19 (1st Cir. 2013) (quoting *Aponte-Torres*, 445 F.3d at 58).

## 2.    Judicial Estoppel Claim

As to US Bank's request to amend the pleadings to include facts related to judicial estoppel, I conclude that the request must be denied because amending the pleadings in this manner would be futile.

"Whether a proposed amendment is futile is 'gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6).'" *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 40 (1st Cir. 2022) (quoting *Juárez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 2013)). As such, a motion to amend should be granted "if the amended complaint 'contain[s] sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'"[14] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Rife v. One W. Bank*,

---

[14]  US Bank did not file a proposed amended complaint along with its Second Motion to Amend, despite the fact that this is the best practice when moving to amend a pleading. *See Bernard v. Town of Lebanon*, No. 2:16-cv-00042-JAW, 2017 WL 1232406, at *7 (D. Me. Apr. 3, 2017) ("[A] plaintiff seeking leave to amend a complaint should file a separate motion, which should include as an exhibit the proposed amended complaint."); *Levitt v. Sonardyne, Inc.*, No. 2:12-cv-00032-JAW, 2012 WL 5350037, at *2 (D. Me. Oct. 29, 2012) ("Requests to amend should be made by separate motion and should attach the proposed amended complaint so that the Court is able to evaluate the nature of the proposed amendment and its sufficiency."). Notwithstanding this omission, I reach the merits of US Bank's Second Motion to Amend because the motion itself sets forth, albeit generally, what facts and claims would be included in a Second Amended Complaint. *But see Aponte-Torres*, 445 F.3d at 58 (noting that a plaintiff's filing of only a bare request for leave to amend is a basis for denying that request).

*F.S.B.*, 873 F.3d 17, 21 (1st Cir. 2017) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996))).

Here, as discussed above, even taking all of the facts asserted by US Bank as true, these facts are insufficient to show that Luz is judicially estopped from raising a statute-of-limitations defense or that all of US Bank's claims against Luz are not barred by the statute of limitations.  Consequently, US Bank's proposed amendments fail to state a claim, and it would be futile and serve no purpose to permit US Bank to amend the Amended Complaint to allege judicial estoppel.[15]  *See Amyndas Pharms., S.A.*, 48 F.4th at 40.

Accordingly, US Bank's Second Motion to Amend the Complaint is denied to the extent that it seeks to assert a judicial estoppel claim against Luz.

### 3.    Fraud Claim

US Bank also seeks to add a fraud claim against Stanley, contending that Stanley committed fraud when he signed the 2006 mortgage "under oath affirming that he owned the subject property entirely, when he knew that Luz owned it with him."  ECF No. 38 at 4, ¶ 18.  According to US Bank, it discovered this alleged fraud in the course of doing a title search in 2021, so adding a fraud claim would be timely because under 14 M.R.S.A. § 859 (West 2022), an action for fraud may be brought within six years of discovery of the fraud.

---

[15] Moreover, to the extent that US Bank seeks to add a separate count for judicial estoppel, judicial estoppel is a defense and not a separate entitlement to relief.  *See O'Brien v. Town of Bellingham*, 943 F.3d 514, 526 (1st Cir. 2019) (describing judicial estoppel as an "affirmative defense"); *Nwachukwu v. Vinfen Corp.*, No. 16-11815-MPK, 2018 WL 1409795, at *2 (D. Mass. Mar. 21, 2018) (same).

I deny US Bank's request for leave to amend the pleadings to assert a claim of fraud against Stanley because of US Bank's undue and unjustified delay in filing that request.  "[U]ndue delay, on its, own, may be enough to justify denying a motion for leave to amend."  *Hagerty ex rel. U.S. v. Cyberonics, Inc.*, 844 F.3d 26, 34 (1st Cir. 2016); *see also Calderón-Serra*, 715 F.3d at 20 ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend."); *Johnson v. Educ. Testing Serv.*, 754 F.2d 20, 27 (1st Cir. 1985) ("[T]he district court has discretion to deny leave to amend in the face of 'extraordinarily long and essentially unexplained delay.'" (quoting *Carter v. Supermarkets Gen. Corp.*, 684 F.2d 187, 192 (1st Cir. 1982))).  In these circumstances, "when 'a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for [its] neglect and delay.'"  *Nikitine*, 715 F.3d at 390-91 (quoting *Hayes v. New Eng. Millwork Distribs., Inc.*, 602 F.2d 15, 19-20 (1st Cir. 1979)).

Viewing US Bank's Second Motion to Amend the Complaint in the context in which it was filed, I conclude that several factors weigh in favor of denying the Second Motion to Amend because of undue delay.

First, US Bank has not explained the reason for its delay in seeking to amend the pleadings to assert a claim of fraud against Stanley.  The original Complaint was filed in the Superior Court in November 2021, and the case was removed to this Court in February 2022.  The Complaint was previously amended without objection in March 2022.  But the first time that US Bank indicated that it wished to add a fraud claim against Stanley was in August 2022, when the Second Motion to Amend was

filed—more than nine months after the original Complaint was filed.  US Bank has not provided any reason for the dilatory nature of its request.

Nor, in my view, is there such a justification.  According to the allegations in US Bank's Second Motion to Amend, US Bank discovered the alleged fraud in the course of doing a title search in 2021.  US Bank did not indicate precisely when in 2021 this occurred but given the fact that the original Complaint was filed in November, it is likely that the fraud was known before the original Complaint was filed.  Even if the alleged fraud was discovered in November or December 2021 (after the original Complaint was filed), there is still no explanation for why US Bank waited until August 2022 to press that claim or why it failed to assert that claim when it first amended its Complaint in March 2022.  US Bank's failure to explain this delay weighs heavily against permitting it to amend the Complaint again to assert fraud.[16]

Second, "[t]his is not a case of new allegations coming to light following discovery, or of previously unearthed evidence surfacing."  *Nikitine*, 715 F.3d at 391 (alteration in original) (quoting *Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011)).  By US Bank's own admission, it knew of the alleged fraud when it filed the original Complaint or, at the very latest, months before it first amended the Complaint.  But it was not until Luz filed a Motion for Judgment on the Pleadings that US Bank sought to amend the Complaint to add a claim of fraud.  Accordingly,

---

[16] US Bank's failure to explain why it delayed in pressing its fraud claim is especially troubling in this case.  The facts that gave rise to the fraud claim were allegedly discovered during a title search and, therefore, the alleged fraud was a matter of public record for years before US Bank sought to assert its fraud claim.

this appears to be a case in which US Bank attempted "to devise 'new theories of liability [] based on the same facts pled in [its] original complaint'—theories that could and should have been put forward in a more timeous fashion." *Nikitine*, 715 F.3d at 391 (first alteration in original) (citations omitted) (quoting *Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 4 (1st Cir. 1983)).  Such a circumstance weighs against concluding that justice requires US Bank be permitted to amend its Complaint.  *See id.*; *Mulder*, 865 F.3d at 21.

Third, this is not the first opportunity that US Bank has had to amend its Complaint in this case.  When a party has already had an opportunity to amend its complaint, that weighs against a conclusion that justice requires that they have another opportunity to do so.  *See Nikitine*, 715 F.3d at 390 ("Whether the plaintiff, by rule or court order, had a prior opportunity to amend is one data point to be taken into account . . . .").

Accordingly, because of US Bank's undue delay in asserting its fraud claim, the Second Motion to Amend is denied to the extent that it seeks to assert a fraud claim against Stanley.

## C.    US Bank's Motion to Stay

Finally, US Bank seeks a stay of this case so that it can assert a claim of fraud against Stanley (ECF No. 39).  Because I conclude that US Bank is not entitled to amend its Complaint to assert a claim of fraud against Stanley, I deny this request as moot.  Even if I had decided that US Bank was entitled to amend its Complaint, I would still reject its request for a stay because US Bank has failed to explain why such a stay is necessary.  According to US Bank, "[s]ince Stanley Tenpenny has been

discharged in Chapter 7 bankruptcy, it may be necessary for the Plaintiff to obtain relief in his bankruptcy before it can amend the complaint in this action to allege fraud." ECF No. 39 at 2.  But neither in its pleadings nor at oral argument did US Bank provide any specifics about whether a stay would in fact be necessary or why it needed permission from the Bankruptcy Court to assert a claim of fraud against Stanley.  The authority to grant a stay is discretionary, *Ryan v. Gonzales*, 568 U.S. 57, 73 (2013), and, under these circumstances, I would decline to exercise that discretion based on the barebones information provided by US Bank.

## III.  CONCLUSION

Accordingly, Luz Tenpenny's Motion for Judgment on the Pleadings (ECF No. 37) is **GRANTED**.  US Bank's Second Motion to Amend the Complaint (ECF No. 38) is **DENIED**.  US Bank's Motion to Stay (ECF No. 39) is **DENIED**.

**SO ORDERED.**

**Dated:  March 7, 2023**

_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**